**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| B. WILLIS, C.P.A., Inc.,<br>an Oklahoma corporation<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br>a foreign corporation, UNION PACIFIC<br>RAILROAD COMPANY, a foreign<br>corporation, and PUBLIC SERVICE<br>COMPANY OF OKLAHOMA, an<br>Oklahoma Corporation,<br><br>Defendants. | Case No.  04-CV-163-TCK-TLW<br>           04-CV-640-TCK-TLW<br>           (Consolidated) |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment on Liability (Doc. 127); Defendant BNSF Railway Company's ("BNSF") Motion to Clarify (Doc. 133); Defendant Public Service Company of Oklahoma's ("PSO") Motion for Summary Judgment (Doc. 149); PSO's Motion to Dismiss (Doc. 150); BNSF's Motion for Summary Judgment (Doc. 151); BNSF's Motion to Dismiss (Doc. 152); BNSF's Motion to Vacate Order (Doc. 168); and Plaintiff's Motion for Scheduling Order (Doc. 192).

**I.      Background**

Plaintiff B. Willis, C.P.A., Inc. ("Willis") owns property in Rogers County, Oklahoma. Defendant PSO operates a power plant nearby ("Rogers County plant"). Defendant Union Pacific Railroad Company ("Union Pacific") owns a rail line that runs adjacent to the Rogers County plant, and BNSF owns a rail line that is within approximately ten miles of the plant. To fuel its plant, PSO purchases coal from the Powder River Basin in Wyoming and contracts with BNSF to transport the

1

coal to the Rogers County plant. Because BNSF did not own or operate a rail line adjacent to the plant, it subcontracted with Union Pacific to complete delivery. In an effort to generate competition between BNSF and Union Pacific and lower its shipping costs, PSO decided to build a rail spur from BNSF's rail line to the Rogers County plant. Part of PSO's rail spur was to cross Willis' property. PSO therefore offered to purchase an easement from Willis, but Willis refused. PSO responded by filing a condemnation action in Rogers County seeking to take Willis' property by eminent domain.

PSO filed its condemnation action pursuant to Okla. Stat. tit. 27, § 7 and Okla. Stat. tit. 66, §§ 51-60. PSO then petitioned the state court to select a three-person commission to determine the amount of just compensation to be paid to Willis for the taking. The state court appointed a commission and provided written instructions as to the manner in which the commission should inspect and assess Willis' property for damage. The commissioners inspected Willis' property, assessed compensation for the injury in the amount of $49,920.00, and filed a report with the Rogers County Court Clerk and the parties. PSO then paid the assessed sum to the court clerk. Willis filed written exceptions to the commission's report, alleging that the proposed taking of its property was not necessary for the accomplishment of a lawful public use, challenging the damage assessment, and demanding a jury trial. When Willis filed its exceptions, it also served PSO with discovery seeking documents and information related to Willis' public use argument. PSO refused to produce the requested documents and information, and the state court judge denied Willis its requested discovery. Willis filed an interlocutory appeal claiming its constitutional rights to due process and certain statutory rights were violated when the state court judge denied it discovery and denied it a meaningful opportunity for a hearing prior to PSO invoking its right to condemn. *Public Service Co. of Oklahoma v. B. Willis, C.P.A., Inc.*, 941 P.2d 995, 998 (Okla. 1997).

While Willis' interlocutory appeal was pending, PSO lawfully took possession of the condemned property and began construction of the rail spur and a bridge across approximately 1,069 feet of Willis' property. In order to construct the rail spur, PSO was required to make a large subsurface cut along five hundred feet of the easement, resulting in the removal of limestone and other minerals. After completing the construction of the rail spur, PSO entered into an Industrial Track and Operating Agreement with BNSF for rail transportation of coal on the spur.

In 1997, Willis prevailed on its interlocutory appeal, and the Oklahoma Supreme Court remanded the case to allow Willis the opportunity to challenge PSO's petition and to conduct discovery. *See PSO v. Willis*, 941 P.2d 995, 997 (Okla. 1997). Upon remand, Willis asked the state court to lift an injunction it had entered barring Willis from interfering with the rail spur across its property. The state court refused, and Willis pursued another interlocutory appeal, which was denied by the Oklahoma Court of Appeals. Willis appealed to the Oklahoma Supreme Court, and, before a decision was rendered, Willis filed three federal lawsuits in an effort to prevent PSO from using the rail spur. Further, during the state condemnation proceedings, Willis accused the state trial court judge, Judge James D. Goodpaster ("Judge Goodpaster"), of acting in concert with PSO to deprive Willis of its rights. Willis made various unsuccessful attempts to have Judge Goodpaster recused from the matter, including multiple motions to recuse and a writ of mandamus with the Oklahoma Supreme Court.

In February 2001, Willis filed a petition with the federal Surface Transportation Board ("STB"). The STB concluded that it did not have jurisdiction to hear Willis' petition, and Willis appealed the decision to the Circuit Court for the District of Columbia, where, in 2002, Willis was again denied relief. Undeterred, in February 2004, Willis filed suit against BNSF in Oklahoma state

court, alleging claims of wrongful possession of real property, unjust enrichment, and quasi contract for operating trains on the spur. BNSF removed the action to this Court on the basis of diversity jurisdiction ("04-CV-163"). In August 2004, Willis filed still another action in this Court, this time against PSO, Union Pacific, and BNSF ("04-CV-640"), asserting claims under the Interstate Commerce Commission Termination Act ("ICCTA") and 42 U.S.C. § 1983 ("Section 1983"), as well as state law tort and property claims.[1]  Case number 04-CV-640 was consolidated with 04-CV-163, and both comprise this case.

Meanwhile, the state condemnation action continued. In October 2004, the state court held an evidentiary hearing on Willis' exceptions to the commission's report and on PSO's claim of necessity to take the property for a public use. The state court denied all of Willis' exceptions. Willis appealed the ruling, which was affirmed by the Oklahoma Court of Appeals. *PSO v. Willis*, 155 P.3d 845 (Okla. Ct. App. 2006). In June 2005, this Court adopted Magistrate Judge Sam Joyner's Report and Recommendation, which dismissed Willis' state law and Section 1983 claims under Federal Rule of Civil Procedure 12(b)(1). Later, in January 2006, this Court adopted

---

[1] Specifically, Willis alleged that: (1) ICCTA preempted Oklahoma's eminent domain statutes, as those statutes have been applied to Willis; (2) the condemnation of Willis' property by PSO and BNSF deprived Willis of due process because it was not effected for a public purpose; (3) the condemnation by PSO and BNSF also deprived Willis of equal protection of the law; (4) PSO was trespassing, under Oklahoma law, by going beyond the surface easement it had in Willis' property when PSO removed coal and limestone from below the surface of Willis' property; (5) title to the easement should be quieted in Willis; (6) PSO and BNSF should be ejected from Willis' property; (7) PSO and BNSF are liable to Willis for treble damages under Oklahoma law because they trespassed and wrongfully possessed Willis' property "by means of a state eminent domain proceeding that was rife with fraud, bad faith and oppressive conduct"; and (8) PSO and BNSF are liable to Willis for punitive damages because they violated Willis' rights to due process and equal protection "deliberately, wantonly, intentionally and maliciously." *See B. Willis, C.P.A., Inc. v. BNSF Railway Corp. et al.*, 531 F.3d 1282, 1294 n.12 (10th Cir. 2008) (summarizing Willis' claims in instant case).

4

Magistrate Judge Paul Cleary's Report and Recommendation, which granted BNSF and PSO's Joint Motion for Summary Judgment. Willis appealed both decisions to the Tenth Circuit. During the pendency of Willis' Tenth Circuit appeal, the state court conducted a jury trial on Willis' objections to the commission's award of compensation. The jury awarded Willis $30,134.00 as "just compensation" for the damage to its property, and Willis appealed.

On July 16, 2008, before the state court appeal was concluded, the Tenth Circuit issued its Opinion affirming the dismissal of Willis' claims, except for two, which the Tenth Circuit held should be dismissed without prejudice, because they were not ripe for adjudication ("Tenth Circuit Order"). Specifically, the Tenth Circuit stated: "As to those portions of Willis' due process/equal protection and trespass claims that are not precluded, because the state proceedings challenging the amount of compensation awarded for the easement are still pending, those claims are not yet ripe for adjudication." *B. Willis, C.P.A., Inc.*, 531 F.3d at 1288. The Tenth Circuit found that only the following claims remained:

> (1) Willis' state law trespass claim to the extent it alleges that PSO wrongfully removed coal and limestone from beneath the surface easement ["trespass claim"]; and (2) Willis' due process/equal protection claim asserted against PSO, to the extent that claim is based upon allegations other than that PSO wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings ["Section 1983 claim"].

*Id.* at 1306.

On September 9, 2008, Willis voluntarily dismissed its state court appeal. In its notice of dismissal filed with this Court, Willis stated that "[t]he dismissal of this appeal effectively terminates the state court proceeding." (Doc. 91 at 1.) Willis subsequently filed a Motion for Preliminary Injunction, which the undersigned referred to Magistrate Judge T. Lane Wilson ("Judge Wilson"). After hearing oral argument from the parties, Judge Wilson issued a detailed Report and

5

Recommendation, recommending that the Motion for Preliminary Injunction be denied. (*See* Doc. 158 ("the Report and Recommendation").) This Court overruled Willis' objections to the Report and Recommendation and adopted it as the Order of the Court. (*See* Doc. 167.)

## II.   BNSF's Status as a Party

In light of the Tenth Circuit Order limiting Willis' claims, BNSF now seeks to be dismissed as a party to this suit. BNSF maintains that according to the language of the Tenth Circuit Order, there are no longer any pending claims against it. Willis objects to BNSF's dismissal, arguing that because the Tenth Circuit found BNSF to be "in privity" with PSO, BNSF remains a party to this matter. For the reasons outlined below, the Court finds BNSF's position well-founded.

As argued by BNSF, the Tenth Circuit Order contains language specifying that the only remaining claims are those brought against PSO. Specifically, the Tenth Circuit defined Willis' remaining claims as: "(1) Willis' state law trespass claim to the extent it alleges *that PSO* wrongfully removed coal and limestone from beneath the surface easement; and (2) Willis' due process/equal protection claim *asserted against PSO*, to the extent that claim is based upon allegations other than that PSO wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings." *B. Willis, C.P.A., Inc.*, 531 F.3d at 1306 (emphasis added). Therefore, the plain language of the Tenth Circuit Order indicates that there are no remaining claims against BNSF. *Id.*; Report and Recommendation at 11 ("As to BNSF and Union Pacific, the Tenth Circuit's opinion clearly establishes that neither remains a proper party to this case.").[2]

---

[2] It appears Willis also contends that BNSF remains a party to this case because of specific allegations made by Willis in the Complaint filed in 04-CV-640, although this argument is somewhat unclear. (*See* Resp. of B. Willis, C.P.A., Inc. to Mot. to Clarify Order 2-3; Resp. of B. Willis, C.P.A., Inc. to Brief on Privity Issues 2-3.) As noted above, however, only two of the claims alleged by Willis remain, and both such claims are made against PSO.

6

Second, the Court finds Willis' reliance on the privity issue to be misplaced. Willis appears to contend that because BNSF and PSO are in privity, *any* allegedly wrongful action taken by PSO is somehow imputed to BNSF. The language in the Tenth Circuit Order simply does not support such a finding. Specifically, in discussing the preclusive effect of the state condemnation proceedings on Willis' claims that BNSF and PSO wrongfully possessed and used the easement across Willis' property, the Tenth Circuit made the following statements:

> [B]NSF is in privity with PSO. "Privity is usually defined as mutual or successive relationships to the same rights of property." *Sautbine v. Keller*, 423 P.2d 447, 457 (Okla. 1966) (quotation omitted). However, "[t]here are no hard and fast rules; the existence of privity depends upon the circumstances and requires a person so identified in interest with another that he represents the same legal right." *Wilson v. City of Tulsa*, 91 P.3d 673, 677 (Okla. Civ. App. 2004) (quotation omitted); *see also Hildebrand v. Gray*, 866 P.2d 447, 450-51 (Okla. App. 1993). In this case, BNSF's use of the easement running across Willis' property, and BNSF's right to use that easement, both stem from its contract with PSO. And PSO's right to access the easement across Willis' property stems from its ability to condemn and use that easement. Under these circumstances, BNSF and PSO are in privity. *Cf. State ex rel. Trimble v. Kindrick*, 852 P.2d 758, 760-61 (Okla. App. 1992) (concluding corporate entity which received the deed to a hospital sold to a second corporate entity stood in privity with the second corporate entity in actions challenging sale of hospital).

*B. Willis, C.P.A., Inc.*, 531 F.3d at 1302. The Tenth Circuit further explained that because PSO was entitled to take possession of the easement (as determined in the state condemnation proceedings), Willis was unable to pursue any claims premised upon the allegation that BNSF, through BNSF's contractual relationship with PSO, wrongfully possessed and used the easement. *See id.* at 1303. The fact that BNSF and PSO were in privity was therefore used to preclude certain claims against BNSF, as BNSF was found to have the same legal rights to the easement as were enjoyed by PSO by virtue of its privity with PSO. The existence of the same legal rights to the easement does not, as Willis contend, result in a finding that any allegedly wrongful act taken by PSO be attributed to

BNSF for liability purposes. Absent legal support for such assertion, which Willis notably does not provide, the Court is unwilling to expand the Tenth Circuit's discussion of privity in such a manner.

Therefore, for the reasons outlined herein, the Court dismisses BNSF as a party to this action. The Court grants BNSF's Motion to Clarify (Doc. 133) and BNSF's Motion to Dismiss (Doc. 152), to the extent it seeks dismissal based on BNSF's status as a non-party. The Court further grants BNSF's Motion to Vacate Order (Doc. 168), and the Court's Order of September 11, 2009 is hereby vacated to the extent it requires BNSF to file a response to Plaintiff's Motion to Compel. Finally, due to the dismissal of BNSF as a party to this suit, BNSF's Motion for Summary Judgment (Doc. 151) is deemed moot.

### III. PSO's Motion to Dismiss for Lack of Subject Matter Jurisdiction

PSO moves to dismiss Willis' remaining claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Motions to dismiss for lack of subject-matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of a complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). In a factual attack, as here, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

In support of its motion to dismiss Willis' remaining claims, PSO argues that because Willis voluntarily dismissed the last state court appeal of the state condemnation proceedings, Willis "failed to exhaust its state court remedies," and as such, Willis' claims can never "fully ripe[n]" so as to give this Court subject matter jurisdiction. (*See* PSO's Mot. to Dismiss 4.) This argument has

already been rejected by the Court. Specifically, PSO made this same argument before Judge Wilson at the hearing on Willis' Motion for Preliminary Injunction. (*See* Tr. of Prelim. Inj. Hr'g at 30-31 (arguing that the Court lacks subject matter jurisdiction because Willis dismissed the state condemnation proceedings and did not "conclude" such proceedings).) The Report and Recommendation, which was subsequently adopted by the Court, found PSO's challenge of the Court's subject matter jurisdiction to be unpersuasive. (*See* Report and Recommendation at 13-14.) The Court therefore denies PSO's motion to dismiss for the same reasons as outlined in the Report and Recommendation previously adopted by the Court.[3]

## IV.  Motions for Summary Judgment

Both Willis and PSO seek summary judgment as to Willis' remaining claims. Because Judge Wilson was charged with assessing whether Willis was likely to succeed on the merits of its remaining claims at the preliminary injunction stage, (*see* Report and Recommendation at 12-30), the arguments presented by the parties in their summary judgment motions largely overlap with those presented to Judge Wilson. For example, in moving for a preliminary injunction, Willis argued there was a substantial likelihood it would prevail on the merits because "when PSO cut below the surface

without filing a condemnation proceeding under [Okla. Stat. tit. 66, § 7]," it wrongfully seized Willis' property, (*see* Br. in Support of Mot. for Prelim. Inj. at 11). This is essentially the same argument Willis now presents to the Court. In fact, many portions of Willis' motion for summary

---

[3] PSO filed its motion to dismiss subsequent to the hearing on Plaintiff's Motion for Preliminary Injunction before Judge Wilson, but before Judge Wilson issued his Report and Recommendation. Therefore, PSO did not have the benefit of Judge Wilson's Report and Recommendation, and this Court's adoption thereof, when filing the motion to dismiss.

judgment appear to be "cut and pasted" from Willis' brief in support of its motion for preliminary injunction. Further, in objecting to Willis' request for a preliminary injunction, PSO argued such claims were time-barred and that Willis was additionally precluded from asserting such claims based on the state condemnation proceedings. These arguments are repeated in PSO's summary judgment motion. Because the arguments before Judge Wilson largely overlap with those made in the parties' summary judgment motions, the Report and Recommendation (later adopted as the Order of this Court) necessarily makes findings as to these arguments. Although such findings were not made under the Rule 56 standard, as is applicable here, the Court finds them relevant in assessing the parties' cross motions for summary judgment. Therefore, in an effort to conserve judicial resources in a matter that has already spanned almost eighteen years and traveled through various state and federal courts and one administrative agency, the Court will incorporate the reasoning of the Report and Recommendation as outlined below.

### A.     Standard for Cross-Motions for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This legal standard does not change where, as here, the parties file cross-motions for summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* Where the parties file cross-motions for summary judgment, the court is "entitled to assume that no evidence needs

to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Id.* Cross-motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

### B.   Willis' Motion for Summary Judgment

Willis argues that it is entitled to summary judgment because PSO failed to file a condemnation proceeding under Okla. Stat. tit. 66, § 7 ("Section 7"), thereby trespassing "off of the easement," (Willis Mot. for Partial Summ. J. 16), and resulting in a seizure of Willis' property without due process of law, (*id.* 16-19). Applying the applicable standard for cross-motions for summary judgment, the Court incorporates the reasoning of the Report and Recommendation and rejects Willis' position that it is entitled to "judgment as a matter of law" because PSO failed to file a condemnation proceeding under Section 7. Fed. R. Civ. P. 56(c).

Specifically, as outlined in the Report and Recommendation, Section 7 sets forth certain "powers" conferred on railroad and utility companies but does not set forth any procedure by which a railroad or power company is to utilize these powers. (*See* Report and Recommendation 14-17.) PSO was accordingly "not obligated to institute a Section 7 condemnation proceeding, a procedure that does not exist under Oklahoma law." (*Id.* 17.) Rather, a condemnation action is to be brought under Okla. Stat, tit. § 51, *et. seq*, which was done in this matter. (*Id.* 16 ("There is no indication in the Oklahoma Supreme Court's decisions on eminent domain that a condemnation action can or should be brought under any statutes other than Title 66, Section 51, *et. seq*.").) Willis is therefore not entitled to summary judgment as to either of its remaining claims based on the theory that PSO

was required to file a separate condemnation proceeding under Section 7, and its motion for summary judgment is denied.

### C. PSO's Motion for Summary Judgment

PSO maintains that summary judgment should be entered against Willis on its trespass claim because: (1) Willis does not own the minerals that were removed from beneath the surface easement; (2) Willis was compensated in the state condemnation proceedings and the Section 1983 claim is precluded by both the state condemnation proceedings and other federal cases brought by Willis; (3) PSO was entitled to make "cuttings" and remove material as part of the easement; and (4) the trespass claim is barred by the applicable statute of limitations. Further, PSO argues summary judgment is appropriate as to the Section 1983 claim because: (1) Willis is precluded from bringing such a claim due to (a) the state condemnation proceedings and (b) *B. Willis, C.P.A., Inc. v. Goodpaster*, N.D. Okla. Case No. 96-CV-1083-E, wherein Willis accused Judge Goodpaster of appropriating Willis' property without a meaningful hearing in violation of certain constitutional rights; (2) Willis received discovery and a meaningful hearing, mooting any claim that its due process rights were violated; and (3) Willis admits there is no evidence to support its claim of impropriety.

In assessing these argument pursuant to the applicable Rule 56 standard, the Court finds that PSO is entitled to judgment as a matter of law on Willis' remaining claims. Specifically, the Court incorporates the reasoning employed in the Report and Recommendation in finding that the preclusive effect of the state condemnation proceedings render summary judgment appropriate as to the trespass and Section 1983 claims. (*See* Report and Recommendation 21-27.) As outlined in the Report and Recommendation, "[w]hen Willis voluntarily dismissed its state court appeal, all

issues in the state condemnation action became final and subject to the doctrines of res judicata and issue preclusion." (*Id.* 22.) "[B]y dismissing its state court appeal in the condemnation action . . . the issue of the scope of PSO's taking is now finally determined, and Willis cannot reassert it here," rendering Willis' trespass claim precluded. (*Id.* 23-24.) Further, with respect to Willis' Section 1983 claim:

> Willis alleges the same facts . . . against the same defendant, PSO and its privy (Judge Goodpaster), as Willis alleged in support of its motion to recuse in the state condemnation case. Thus, Willis' Section 1983 constitutional challenges were submitted to the state court for determination were disposed of by the state court . . . [and] Willis cannot raise, for a second time, the same constitutional questions that were adjudicated in the state court proceeding.

(*Id.* 25-26 (finding PSO successfully asserted the affirmative defense of issue preclusion and that Willis did not "make out a prima facie case showing a reasonable probability that it [would] ultimately prevail on its Section 1983 claim").) Summary judgment is therefore appropriate with regard to both the trespass and Section 1983 claims.[4]

## V.     Conclusion

For the reasons outlined here, the Court GRANTS BNSF's Motion to Clarify (Doc. 133); BNSF's Motion to Dismiss (Doc. 152), to the extent it seeks dismissal based on BNSF's status as

---

[4] Even assuming Willis could escape the doctrines of res judicata and issue preclusion, Willis' trespass claim is additionally barred because: (1) the subsurface cut made by PSO was within the easement, as it was "necessarily incident to the construction and operation of the rail spur," (Report and Recommendation 21 (finding Willis could not demonstrate a "reasonable probability that it would ultimately prevail on its claim that the subsurface cut constitutes willful and wanton conduct amounting to trespass")); and (2) it "must have been brought within two years of 1994, the latest date on which Willis became aware of the removal of its coal and limestone," (Report and Recommendation 27-28).

a non-party; BNSF's Motion to Vacate Order (Doc. 168); and PSO's Motion for Summary Judgment (Doc. 149). The Court DENIES PSO's Motion to Dismiss (Doc. 150) and Plaintiff's Motion for Partial Summary Judgment on Liability (Doc. 127).  BNSF's Motion for Summary Judgment (Doc. 151) and Plaintiff's Motion for Scheduling Order (Doc. 192) are DEEMED MOOT.  Separate Judgments will be entered by the Court.

**SO ORDERED** this 28th day of July, 2010.

_____

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**